Filed 4/2/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re J.N., a Person Coming Under the Juvenile Court Law. | B308879 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>V.N.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 20CCJP02416) |

APPEAL from orders of the Superior Court of Los Angeles County, Emma Castro, Judge Pro Tempore. Affirmed in part, reversed in part and vacated in part.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

Appellant V.N. (Father) challenges the juvenile court's jurisdictional finding as to Father in dependency proceedings regarding his now seven-year-old son, J.N., as well as the court's dispositional order removing J.N. from Father's custody and denying Father reunification services. Father contends the challenged jurisdictional finding and removal order are solely based on Father's incarceration and criminal record, and that such evidence is insufficient to support either jurisdiction or removal. On the record before us, we agree. Accordingly, we vacate the juvenile court's jurisdictional finding as to Father and reverse the dispositional order removing J.N. from Father's custody.

Father further argues the trial court erred in denying him reunification services based on a detriment finding under Welfare and Institutions Code section 361.5, subdivision (e).[1] We conclude section 361.5 is inapplicable and that Father was not entitled to reunification services, regardless of any potential detriment to J.N. therefrom. We nevertheless vacate the court's detriment finding, because it could prejudice Father in future dependency proceedings.

### FACTS AND PROCEEDINGS BELOW

J.N., born in June 2013, is the son of C.D. (Mother)[2] and Father. Father has been incarcerated since August 2019, and is not eligible for parole until February 2023.

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to this appeal.

### A. *Circumstances Leading to Dependency Proceedings Below*

The instant dependency proceedings arose from a referral generated in April 2020 when Mother and J.N.'s newborn half sibling, R.B., tested positive for marijuana at R.B.'s birth. Mother and R.B., along with J.N.'s two other maternal half siblings, lived with the maternal grandmother. A maternal aunt told authorities that Mother, maternal grandmother, and Mother's boyfriend (the father of infant R.B.) all smoked marijuana inside the home. The maternal aunt also described a recent physical altercation between Mother and her boyfriend.

### B. *Initial Petition and Detention Report*

On April 30, 2020, the Los Angeles County Department of Children and Family Services (DCFS) filed a section 300 petition alleging J.N. and his half siblings were at risk of serious physical harm as the result of the violence and substance abuse of Mother and her boyfriend, as well as Mother's history of mental and emotional problems. The petition made no allegations against Father, who was incarcerated at the time of the referral.

The social worker's detention report did describe an inconclusive 2015 referral involving Father as part of the family's "prior child welfare history." (Capitalization omitted.) According to the referring party, in late December 2015, Mother and J.N. went to Father's residence to spend the night, and Mother and Father got into an argument, during which Father punched Mother in the face twice, causing visible injuries to her lip and left eye. The description in the report does not indicate where J.N. was during this incident, although he was "with [M]other" that night. The reporting party claimed that Mother had obtained a restraining order against Father in 2014 after a previous incident of domestic

3

violence. The allegations in the referral were deemed "[i]nconclusive," as Mother and Father presented conflicting versions of the events, and the prior restraining order the referring party referenced "was not verified."

At the detention hearing on May 5, 2020, the court made prima facie findings on the petition and detained the children. Father was not present or represented by counsel at the hearing. The court deferred paternity findings regarding J.N. until Father could be present.

## C. *Amended Petition and Jurisdiction/Disposition Report*

In November 2020, DCFS filed an amended section 300 petition to allege J.N. was at risk of serious physical harm as the result of Father's "violent criminal history." The petition did not reference or rely on the 2015 inconclusive referral alleging domestic violence by Father, but rather relied exclusively on a list of his convictions and his associated incarceration. As supporting evidence for the allegations, the jurisdiction/disposition report attached Father's court dockets and detailed the results of his California Law Enforcement Telecommunications System report. According to these sources, Father was convicted in 2014 of threatening a crime with intent to terrorize and exhibiting a deadly weapon (other than a firearm), in 2016 of assault with a deadly weapon (other than a firearm), and in March 2019 of causing a fire of an inhabited structure/property and assault with a deadly weapon with force and by means likely to produce great bodily injury. The 2019 convictions, both of which occurred while Father was on probation for prior crimes, resulted in the eight-year prison sentence he is currently serving. Father's record also included an entry consistent with some law enforcement involvement in the incident described in the 2015 inconclusive referral. Specifically, it

4

noted an arrest for inflicting corporal injury on a spouse or cohabitant on December 28, 2015, which did not result in any further court action for a "reason unknown." The report did not include any further information regarding the circumstances of any of Father's crimes.

The report also included Mother's statements that she had prevented Father from being a part of J.N.'s life since the 2015 incident. Mother indicated that Father "would look for [J.N.] but she did not allow any contact with him due to his aggressive behavior."

### D.    *Jurisdiction/Disposition Hearing*

At the combined jurisdiction and disposition hearing in November 2020, Father was represented by counsel and appeared via phone. In response to questions from the court to establish paternity, Father indicated that he never lived with Mother, but that after J.N. was born in June 2013, he would visit Mother at her home to help care for J.N. He further stated that he took J.N. to his home for a week after J.N. was first born and then "every couple of days" during that time period. The court found Father to be J.N.'s presumed father and declared J.N. a dependent of the court.

The court sustained the marijuana-related jurisdictional allegations against Mother with certain amendments. The court also sustained the jurisdictional allegations against Father as pled, noting Father had "very serious convictions of crimes that impact child safety and a parent's safety while caring for their child," including "one . . . for domestic violence." Because it "was not clear to the court whether [Father] made a request for custody," "in an abundance of caution," the court found by clear and convincing evidence that placement with Father would be detrimental to J.N. and removed J.N. from Father. The court placed J.N. with Mother.

5

The court also denied Father reunification services under section 361.5, subdivision (e)(1). Section 361.5 sets forth certain circumstances under which a court may deny a parent reunification services to which the parent is otherwise entitled. (See § 361.5, subds. (b) & (e).) The court found such circumstances existed here, because offering reunification services to Father would be detrimental to J.N. and Father was incarcerated. (See § 361.5, subd. (e)(1).)

Father timely appealed.

## DISCUSSION

### A.    *The Record Does Not Contain Substantial Evidence to Support the Court's Jurisdictional Finding as to Father*

Father first challenges the court's jurisdictional finding as to him.

As a preliminary matter, we reject DCFS's argument that, because the court's unchallenged findings involving Mother create an independent basis for jurisdiction, we should not address the jurisdictional argument in Father's appeal. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) However, we generally will exercise our discretion and reach the merits of a challenge to any jurisdictional finding when, as DCFS acknowledges is the case here, the finding serves as the

6

basis for a dispositional order also challenged on appeal. (See, e.g., *id.* at p. 454.) We therefore consider the merits of Father's appeal.

In reviewing a challenge "to the sufficiency of the dependency court's jurisdictional findings, our power begins and ends with a determination as to whether substantial evidence exists, contradicted or uncontradicted, supporting the dependency court's determinations. We review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings. [Citations.] Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

A child may come within the jurisdiction of the juvenile court under subdivision (b) of section 300 if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1).) In order to sustain a petition under section 300, a significant risk to the child must exist " 'at the time of the jurisdiction hearing.' " (*In re David M.* (2005) 134 Cal.App.4th 822, 829; see *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 (*Rocco M.*) ["the question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm," italics omitted].) DCFS "has the burden of showing specifically how the minor[ ] ha[s] been or will be harmed." (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318.) Evidence of past conduct may be probative of current conditions, and may assist DCFS in meeting this burden. (*Ibid.*; *In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.) However, DCFS must establish a nexus between the parent's past

7

conduct and the current risk of harm.  (See *In re Roger S.* (2018) 31 Cal.App.5th 572, 583.)

Here, the sole evidentiary basis for the jurisdictional finding as to Father is his incarceration and criminal record.  Father argues substantial evidence does not support an actual nexus between this criminal history and any specifically identified, substantial, current risk of serious physical harm to J.N. [3]  We agree.

DCFS presented evidence that Father's record includes convictions for violent crimes and convictions for crimes committed while Father was already on probation.  This evidence supports a reasonable inference that there is a substantial risk Father will commit crimes—even violent crimes—in the future.  But that is not the same as a substantial risk J.N. *will be harmed.*  Although it is possible that evidence of a parent's violent criminal record could support a reasonable inference of risk to the parent's child, the evidence in this record does not.  Nothing in the record suggests any of Father's crimes were against children or involved children.  The record also does not support that Father's criminal conduct ever placed J.N. in danger during the approximately two years he appears to have been involved in J.N.'s life.  And although DCFS

---

[3] The mere fact of a parent's incarceration is not sufficient evidence to provide a basis for a juvenile court's assertion of jurisdiction.  (*In re S. D.* (2002) 99 Cal.App.4th 1068, 1077 ["[t]here is no 'Go to jail, lose your child' rule in California"].)  Under certain circumstances, an incarcerated parent's failure to ensure that a child is protected from an abusive situation of which the incarcerated parent knew or should have known, and/or a parent's inability to make proper arrangements for the care of a child during the parent's incarceration, may provide a basis for jurisdiction.  (See *In re James C.* (2002) 104 Cal.App.4th 470, 483–484; see also § 300, subd. (g).)  Neither such situation is alleged in the petition or reflected in the record in this case.

may be correct that Father exposing J.N. to his criminal ways could put J.N. at risk, the record does not provide any nonspeculative basis for the court to conclude that Father is likely to do so. For example, nothing in the record suggests Father ever exposed J.N. (or any other child) to his criminal activities, that he ever provided J.N. (or any other child) access to weapons or other dangerous instruments of his crimes, or that J.N. (or any other child) was even in Father's care at the time Father committed the crimes for which he was convicted.[4] Nor does the record reflect that Father ever fought Mother's efforts, beginning in late December 2015, to shield J.N. from any exposure to Father and Father's lifestyle.

Thus, although we acknowledge that, on an abstract level, violent crime is incompatible with child safety, DCFS cannot use such generalities to satisfy its burden of proving an "*identified, specific hazard* in the child's environment" that poses a substantial risk of serious physical harm to him. (*Rocco M., supra*, 1 Cal.App.4th at p. 824.) Without more evidence than was presented in this case, such future harm is merely speculative. Our conclusion that Father's criminal history did not put J.N. at risk at the time of the jurisdictional hearing is further bolstered by the fact that Father was not even eligible for parole until more than two years after that time.

Nor do we accept that a parent's violent criminal record, without more, *necessarily* establishes that a parent has a violent disposition sufficient to establish the requisite risk of physical harm to a particular child. Certainly, a parent's past violent criminal

---

[4] The record does not support the court's characterization of Father's criminal past as including "very serious convictions of crimes that impact child safety and a parent's safety while caring for [the] child," including "one . . . for domestic violence."

9

conduct will be highly relevant in determining the likelihood of violence to a child in the future. But DCFS must still prove some nexus between the past violence and some likely future violence that could endanger the child. Here, it did not. For example, evidence of domestic violence might, under certain circumstances, support such a nexus. But here, Father was not convicted of any crime involving domestic violence, DCFS deemed the 2015 referral alleging domestic violence to be inconclusive, and there was no evidence of the restraining order the referring party claimed Mother had obtained against Father. There is thus no evidence to connect Father's violent criminal history with any likelihood of future domestic violence that could pose a danger to J.N.

Therefore, the record does not contain substantial evidence to support the court's jurisdictional finding based on allegations regarding Father. We therefore vacate the juvenile court's jurisdictional finding as to Father.

### B. *The Record Does Not Contain Substantial Evidence to Support the Removal of J.N. From Father*

Father also challenges the court's removal order on the bases that (1) the court applied the incorrect statute (section 361.2, subd. (a)), and (2) the record does not contain substantial evidence to support the findings necessary for removal under the correct statute.[5] (See *Kimberly R. v. Superior Court* (2002) 96 Cal.App.4th

---

[5] DCFS contends Father forfeited these arguments because he failed to challenge the court's removal order below. As to Father's argument regarding the legal basis for the court's removal order, pure legal claims related to a court acting in excess of its jurisdiction generally are not subject to the forfeiture doctrine. (See *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.) As to Father's

1067, 1078 [substantial evidence review of removal findings].)
We agree on both points.

Section 361, subdivision (d) is the applicable statute here and sets forth the legal findings necessary for the juvenile court to remove J.N. from Father.  (See § 361, subd. (d).)  In its written minute order, the juvenile court cited several sections as the basis for removing J.N. from Father—including section 361, subdivision (d)—but in substance applied a different statute, which Father correctly argues does not apply.  We need not further address this error, however, as we conclude the record does not in any case contain substantial evidence to support removal under the correct section 361, subdivision (d) standard.

Section 361, subdivision (d) permits removal from a parent with whom the child did not reside when the petition was filed only upon a finding by clear and convincing evidence of a current "substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child," were the parent "to live with the child or otherwise exercise the . . . right to physical custody."  (§ 361, subd. (d).)  When applying this test to an incarcerated parent, the question cannot be whether such danger would exist, were the child literally to "live" with the parent during the parent's incarceration, as this is not a realistic possibility— a child cannot "live" at an adult prison.  Nor could the fact of a parent's incarceration at the time of disposition provide the basis for a detriment finding in any event.  (See *In re V.F.* (2007) 157

---

substantial evidence argument, a claim that the evidence is insufficient to support a disposition order in a dependency matter generally is not forfeited even if not raised below.  (*In re R.V.* (2012) 208 Cal.App.4th 837, 848.)

11

Cal.App.4th 962, 971 (*V.F.*).)[6]  Indeed, "cases addressing removal
by reason of a custodial parent's incarceration[ ] under section 300,
subdivision (g) . . . [for failure to make adequate plans for the child's
care during the parent's incarceration] have held that '[t]here is
no "Go to jail, lose your child" rule in California[,]' " and "[w]e
do not believe the Legislature intended" other code sections "to
be interpreted so as to permit [such] a result [which] the courts
have held to be unacceptable under section 300[, subdivision] (g)."
(*In re Isayah C.* (2004) 118 Cal.App.4th 684, 696 (*Isayah C.*).)

The test must therefore be whether Father "otherwise
exercis[ing] [his] . . . right to physical custody" (§ 361, subd. (d))—
for example, by making arrangements for J.N.'s living situation
while Father is still in prison—would create the requisite
substantial risk.[7]  (See *Isayah C., supra,* 118 Cal.App.4th at p. 700

---

[6]  We acknowledge that, in reaching this conclusion,
the court in *V.F., supra,* 157 Cal.App.4th 962, was reviewing
a detriment finding under section 361.2, subdivision (a), not
section 361, subdivision (d).  (*V.F., supra*, at p. 971.)  Although
there may be circumstances in which the differences between
these two detriment standards could yield different results (see
*id.* at p. 973), no such differences would render incarceration
an appropriate basis for a detriment finding under one standard
but not the other.  (*Compare* § 361.2, subd. (a) [placement with
parent would be "detrimental to the safety, protection, or physical
or emotional well-being of the child"], *with* § 361, subd. (d)
[placement with parent would create "substantial danger to
the physical health, safety, protection, or physical or emotional
well-being of the child"].)

[7] The removal statute also specifically addresses
circumstances involving an institutionalized parent with whom
the child lived at the time the dependency petition was filed, and
provides that a child may be removed from such a parent "who has

12

["a parent may have custody of a child, in a legal sense, even while delegating the day-to-day care of that child to a third party for a limited period of time"].)  Nothing in the record suggests that Father intended to exercise his rights to physical custody over J.N., let alone how his doing so would put J.N. in physical danger.  Nor, for that matter, does the evidence DCFS offered to support its request for removal from Father—the same evidence it offered to establish jurisdiction as to Father—support a finding that there would be the requisite danger to J.N. if he lived with Father after Father is released from prison.  We therefore reverse the court's dispositional order to the extent it removes J.N. from Father.

### C. *The Court's Detriment Finding under Section 361.5, Subdivision (e)(1) Must Be Vacated*

Father asserts the juvenile court erred in denying him family reunification services under one of section 361.5's so-called services "bypass" provisions.

Family reunification services "shall only be provided when a child has been placed in out-of-home care, or is in the care of a previously noncustodial parent under the supervision of the juvenile court."  (§ 16507, subd. (b); see also § 16507, subd. (a) ["[f]amily reunification services shall be provided or arranged for by county welfare department staff *in order to reunite the child separated from his or her parent because of abuse, neglect, or exploitation,*" italics added].)  Section 361.5 sets forth, inter alia, various situations in which the court may deny a parent

---

been incarcerated or institutionalized" if that parent "cannot arrange for the care of the minor."  (§ 361, subd. (c)(5).)  Of course, because J.N. did not live with father at the time the petition was filed, this section is inapplicable.

reunification services to which the parent is otherwise entitled. (See § 361.5, subd. (a)(1) ["[f]amily reunification services, *when provided*, shall be provided as follows," italics added]; see § 361.5, subds. (b) & (e).)

The court relied on one such bypass provision in denying Father services. (See § 361.5, subd. (d) [involving incarcerated parents].) But section 361.5 and its bypass provisions are inapplicable where, as here, "at the disposition hearing, a child does not enter foster care, but is placed with a [previously custodial] parent." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1165; *In re A.C.* (2008) 169 Cal.App.4th 636, 650.) This is because, under such circumstances, neither parent was entitled to reunification services to begin with, so a bypass of such entitlement is unnecessary. (See § 16507, subd. (b); § 361.5, subd. (a)(1).) Therefore, Father is correct that the court erred in relying on section 361.5 to bypass a grant of reunification services, but that is only because the court was not authorized to grant Father such services in the first place.

Although the court's error did not deprive Father of reunification services, it could potentially prejudice him in future dependency proceedings. Specifically, the court made the requisite finding to deny services under section 361.5, subdivision (e)(1) that reunification for Father would be detrimental to J.N. This finding could "constitute a sufficient basis for termination of parental rights" if J.N. were ultimately removed from both parents and fails to reunify. (§ 366.26, subd. (c)(1).) Because there is a nonspeculative risk that the erroneous detriment finding could prejudice Father later in this case, we vacate it.

14

## DISPOSITION

The juvenile court's jurisdictional finding as to Father is vacated, the detriment finding as to Father under section 361.5, subdivision (e)(1) is vacated, and the order removing J.N. from Father's custody is reversed.

In all other respects, the orders are affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.

15