Filed 12/24/18; Certified for Publication 1/23/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ROGER S., a Person Coming Under the Juvenile Court Law. | B290290 (Los Angeles County Super. Ct. No. 18CCJP02109) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E.S., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Nichelle Blackwell, Juvenile Court Referee. Reversed and remanded with directions.

Melissa A. Chaitin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Acting Assistant County Counsel, and Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

In this dependency case (Welf. & Inst. Code, § 300 et seq.),[1] E.S. (Mother) challenges the sufficiency of the evidence supporting the jurisdiction finding against her.  We conclude the evidence presented at the adjudication hearing was insufficient to support jurisdiction and therefore reverse the finding as well as the disposition order and the custody order the juvenile court issued upon termination of dependency jurisdiction.  As explained below, we remand the matter to the family court for a hearing on custody and visitation.

## BACKGROUND

**Detention**

### Investigation of current referral

As stated in the April 2, 2018 Detention Report, on February 7, 2018, the Los Angeles County Department of Children and Family Services (DCFS) received a telephonic referral, alleging Mother was neglecting her 12-year-old son, Roger S., in that he continually came to school "extremely dirty (body/clothing)" and "with a foul odor."  The caller (who was not identified in the Detention Report) also noted Roger exhibited

_____

[1] Further statutory references are to the Welfare and Institutions Code.

2

"disruptive behavior" at school.[2]  The caller had tried to address the hygiene and behavioral issues with Mother in the past but there had been no improvement, and Mother had declined to cooperate with an attempt to refer Roger for "school based mental health services."  According to the caller, Roger had "reported not having hot water, heat, or other basic necessities in the past."  The caller did not know Mother and Roger's current address, and stated Roger had declined to disclose his address.  The caller visited Mother's last known address (where she no longer lived), and stated her former neighbors insinuated Mother was using cocaine.[3]

On February 13, 2018, a DCFS social worker visited Roger's school to meet with him, but the child was absent.  The assistant principal told the social worker he believed Mother was neglecting Roger, stating Roger "comes to school every day and he is dirty as if his clothes haven't been washed, and has a foul smell to the point that it 'stinks up the whole room.' "  The assistant principal explained the school was unable to contact Mother, and Roger refused to provide contact information.  The assistant principal also noted Roger "rarely" went to class (even when he was present at school) and was "very disruptive" when he did attend class.

---

[2] The caller recounted an incident when Roger threw liquid (soda) at Mother and Mother yelled at Roger during a meeting at the school regarding Roger's behavior.

[3] Mother's criminal history transcript indicated she was arrested for possession of a controlled substance once, on August 17, 2017, but there is no indication formal charges were filed.

On February 14, 2018, one week after DCFS's receipt of the referral, the social worker located Mother and went to her home to interview her and Roger. Mother declined to allow the social worker to enter her home but spoke briefly with the social worker on the porch. She told the social worker she did not want to cooperate with DCFS, explaining "every time [DCFS] comes to her home she has to move because her roommates do not like DCFS in their home."[4] Regarding the allegations in the referral, Mother "stated that her child was clean." The social worker noted Mother appeared "very tired," avoided making eye contact, and became "verbally aggressive" during the interview. She declined the social worker's request that she take a drug test.[5] Before calling Roger out of the home to speak with the social worker, Mother indicated DCFS could detain Roger, stating in a "nonchalant" manner, " 'you guys can do what you want. If you want to take him (the child) then take him.' "

The social worker interviewed Roger on the porch, outside Mother's presence. The social worker noted in the Detention Report that Roger appeared to be wearing clean clothes, he was not dirty, he did not have a foul odor, and he appeared to have a new haircut. He indicated he took baths in the morning before school unless he woke up too late. He further stated he went to school every day, traveling there by bus. He conceded he did not always attend his classes, describing some of them as "boring."

---

[4] Below we summarize Mother's history of DCFS referrals and proceedings.

[5] Mother's substance use was the reason for dependency proceedings that commenced immediately after Roger's birth, as explained in more detail below.

4

He told the social worker he spent time with friends after school, sometimes returning home between 7:00 and 9:00 p.m.[6] He denied Mother used drugs or was involved in domestic violence.

The following day, on February 15, 2018, the social worker visited Roger's school and spoke with him there. The social worker noted in the Detention Report that Roger was wearing a "dirty yellowish shirt that was too small" and dirty pants, "and his finger nails were really dirty." He had been playing outside during physical education class when the social worker contacted him, and he "smell[ed] like sweat." He also "smell[ed] like mildew," according to the social worker. He told the social worker Mother "washes his clothes when she can and he always has clean clothes." He also stated he showered daily so long as he woke up on time for school.

Regarding school personnel's statements that he was "disrespectful in school," Roger told the social worker he did "not act up in class" and did "not disrespect the staff." He acknowledged some of his schoolwork was difficult for him, so he chose not to attend some classes. According to the social worker, he "stated that his mother gave up on him because she knows he is not doing well in school and he has not changed, so mother does not even bother to help him anymore."

Roger informed the social worker he shared a room with Mother, and they each slept on their own twin mattress. He stated Mother did not discipline him. He visited his father,

[6] The caller who made the referral informed DCFS that former neighbors of Mother and Roger told the caller that "Roger was out in the street alone and unsupervised until late hours of the night (midnight)."

Donald J. (Father), every weekend, and Father gave him an allowance and bought him new clothes and shoes.

On March 7, 2018, three weeks after the last home visit, the social worker called Mother "in efforts to engage with [her] again and obtain a better understanding of the family's needs." Mother stated she refused to drug test or "sign[] any documents for [DCFS]," but agreed to come into the office the following week and bring Roger's medical information. She explained she was "tired of [DCFS] coming to her home" on repeated occasions "for the same reasons." She acknowledged Roger was performing poorly in school, and stated she could not "hold [his] hand in school." Mother told the social worker she had recently visited the school and provided staff with her new telephone number and address.

Mother also told the social worker Roger always had food, water, and clean clothes, even though they did not have a stable home. She took him to the laundromat and taught him how to sort and wash his clothes. She stated she planned to visit an agency to help her find a stable home. She explained she was "a victim of domestic violence and that is why [the social worker could not] come into the home."[7] Mother stated she had no contact with Father, but Roger visited him every weekend.

About a week later, on March 13, 2018, the social worker called Mother to set up a meeting. Mother again stated the social worker was not welcome in her home and she would not drug test or sign documents for DCFS. She explained she had to move

---

[7] The Detention Report contains no further explanation of this statement or information about any current domestic violence.

again because the social worker visited her home. She provided Father's telephone number.

On or about the same day, the assistant principal called and stated "Roger was in class throwing rocks and was being disrespectful to him as well as the staff." The social worker went to the school and met with Roger, who denied engaging in the reported conduct. He told the social worker "he hates to go to class because they only have three periods a day for an hour [and] a half and he cannot sit in the class that long." According to the social worker, Roger had an " 'I don't care' " attitude about school, but stated he did not want to attend a different school.

On this day, the social worker expressed concerns about Roger's hygiene. As set forth in the Detention Report, she "observed [him] to have a foul smell like urine and to have a shirt that appeared dirty and too small for him." He stated Mother "needed to wash the clothes," but insisted the clothes he was wearing and his body were clean.

The social worker asked Roger questions about Mother. Roger stated Mother did not want DCFS to enter the home because "she [was] trying to move and get stable." He did not know why she declined to drug test but denied she was using drugs. He told the social worker Mother did "not need to be on the school emergency card" because the school had Father's contact information and should call Father about any issues.

The following day, on March 14, 2018, the social worker interviewed Father, who stated he ended his relationship with Mother soon after Roger was born because of Mother's drug use.[8]

---

[8] The Detention Report does not set forth any additional statements by Father about Mother's drug use.

He explained he had no contact with Mother but visited Roger every weekend. He noted Mother moved and changed her phone number "a lot." According to Father, Mother had two prior DCFS referrals for "the same thing" (not specified), but DCFS closed the referrals without opening a case. He agreed to drug test and stated he would care for Roger if the child were detained from Mother. A few days later, DCFS received Father's positive test result for marijuana.

On March 22, 2018, DCFS applied for an order removing Roger from Mother. A court approved the order the next day. On March 29, 2018, DCFS removed Roger from Mother and released him to Father.

**Prior DCFS referrals and proceedings**

The Detention Report contains a summary of prior DCFS referrals and proceedings involving this family.

When Roger was born in late 2005, he and Mother tested positive for cocaine. DCFS filed a dependency petition and the juvenile court sustained counts about Roger's positive toxicology screen, Mother's 10-year history of substance abuse, and Father's conviction for possession of concentrated cannabis. Mother reunified with Roger and the juvenile court terminated dependency jurisdiction in January 2007.[9]

Between July 2011 and October 2017, DCFS received eight referrals about Mother and Roger. The following five referrals were "closed as unfounded": a July 2011 referral alleging

---

[9] As DCFS later set forth in the May 22, 2018 Jurisdiction/Disposition Report, the juvenile court issued an exit order in December 2006 awarding Mother sole legal and physical custody of Roger and granting Father monitored visitation.

Mother's use and sale of drugs (after which Mother tested negative for drugs); a January 2012 referral alleging domestic violence between Mother and her boyfriend; a February 2014 referral alleging Mother's home was "filthy and unhealthy," Roger had hygiene issues, Mother failed to ensure the child was fed, and Mother took Roger with her or left him home alone when she went to buy and sell drugs; an April 2015 referral alleging the school called Mother on more than one occasion to pick up Roger because he smelled like urine and the other students teased him; and an August 2015 referral alleging Mother was using drugs and Roger was wondering around the streets by himself because Mother failed to pick him up from school.

Three other referrals were "closed as inconclusive." In October 2016, DCFS received a referral alleging Roger came to school with "extreme body odor" and dirty clothes with stains. The referral also alleged the school nurse had given Roger deodorant, but it did not improve the situation. The assistant principal of the school did not express any concerns and told the social worker who investigated the referral that Roger did not appear dirty. Roger told the social worker he "forgot to put deodorant on that day," he had clean clothes, and he showered every night. The social worker made an unannounced visit to Mother's home and observed her folding clean clothes.

A December 2016 referral alleging domestic violence between Mother and her boyfriend was closed as inconclusive after Mother obtained a restraining order.

In October 2017, DCFS received a referral similar to the current referral that led to Roger's detention from Mother, alleging Roger's poor hygiene and behavioral issues and Mother's failure to consent to school-based mental health services. The

9

reporting party stated the school had provided Roger with shampoo, pants, and shorts, but the hygiene issues persisted. The reporting party also represented that the school security guard believed Mother was using drugs. DCFS closed the referral as inconclusive.

**Dependency petition and detention hearing in the current case**

On April 2, 2018, DCFS filed a dependency petition under section 300, subdivision (b), alleging: "On prior occasions, [Mother] failed to provide the child with appropriate parental care of the child [*sic*], in that the child was continuously found dirty with a foul body odor of urine and sweat, and the child repeatedly wore clothes to school that were dirty and too small for the child. The mother's failure to provide appropriate parental care of the child endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage and danger." DCFS recommended the juvenile court detain Roger from Mother and order him to remain in Father's care.

Mother and Father appeared at the April 3, 2018 detention hearing. Mother's counsel requested the juvenile court release Roger to both parents with a safety plan in place, assuring the court Mother now agreed to cooperate with DCFS by drug testing and allowing DCFS access to her home during unannounced visits. Father's counsel requested the court detain Roger from Mother and order the child to remain released to Father. Roger's counsel joined Father's request, noting he (counsel) was concerned about the comment Mother made to the social worker during her first interview about the current referral (" 'you guys can do what you want. If you want to take him (the child) then

10

take him' "). The juvenile court noted it also was "struck" by Mother's "odd" statement.

The juvenile court ordered Roger detained from Mother and released to Father and granted Mother monitored visitation. The court noted Mother was uncooperative and noncompliant with DCFS's requests and that Mother's "unstable lifestyle" was "pretty detrimental" to Roger. The court also ordered Mother to submit to random, on-demand drug and alcohol testing.

**Jurisdiction/Disposition**

### May 22, 2018 Jurisdiction/Disposition Report

On May 3, 2018, a dependency investigator called Mother to set up an in-person interview so she could include Mother's statements in the Jurisdiction/Disposition report. Mother declined to meet with the investigator or provide any additional statements.

On May 4, 2018, the investigator interviewed Roger at Father's home. She noted in the Jurisdiction/Disposition Report that Roger "was very guarded" and continued to be "very short and reserved" when she pressed him for further details in response to her inquiries. Roger described living with Mother as " 'good' " and " 'fine.' " He understood the reasons he was living with Father were that Mother " 'didn't want to do a drug test and was not cooperating and wasn't taking good care of him.' " When the investigator asked him to describe the ways Mother was not taking good care of him, Roger responded that she was not washing his clothes and getting him things he needed, such as soap and a toothbrush. He indicated he did not know why Mother could not get him these items. He stated Mother purchased " 'food and groceries' " with her " 'EBT card,' " and she was trying to find employment.

11

The investigator asked Roger if Mother was using drugs, and he replied, " 'No. I never seen her smoke or drink.' " Next, the investigator asked if he believed Mother needed "any help," and Roger responded, " 'To fix her life.' " As stated in the Jurisdiction/Disposition Report, the investigator then "informed [Roger] that from what [the investigator] had read in the report about mother's behavior, [the investigator] believed mother may be using drugs and would like to help mother. [The investigator] asked [Roger] if he believed mother was using drugs." Roger replied, " 'Probably.' " The investigator asked why he believed Mother was using drugs, and Roger responded, " 'I think she was using, because she would go with her friends and stuff. I never seen her smoke or drink.' " According to Roger, after Mother returned from visiting friends, she would lie down on her bed and go to sleep. He never observed Mother acting "strange, different or weird," as the investigator suggested.

Roger told the investigator he felt " 'good' " about staying at Father's home. When the investigator asked how he would "feel about the court ordering a Family Law Order where [he] would now live with [Father] and only have visits with [Mother]," he responded, " 'It's whatever.' " Later in the report, the investigator attributed the following undated statement to Roger: " 'I do want to stay here with my dad.' "

The investigator also interviewed Father on May 4, 2018. He stated Mother stopped using drugs sometime after Roger was born. Over the years, he suspected she was using drugs again, but he "would give her the benefit of the doubt." As her housing situation became unstable, he asked her to let him have custody of Roger, but she refused. He visited the child on weekends. Roger always told him everything was fine at Mother's home.

Before Roger was detained from Mother, Father used to go to Mother's home and wash Roger's clothes because Mother was not doing it. After detention, Roger expressed surprise that Father washed his clothes so often (once a week) because Mother did not wash them that frequently. Father stated he would agree to an order awarding him " 'full custody' " of Roger with visitation for Mother.

On May 8, 2018, the investigator interviewed the assistant principal at Roger's school. He stated he noticed improvement in Roger's hygiene and in-class attendance since the child started staying with Father. He noticed only a slight improvement in Roger's behavior and believed the child " 'would benefit from mental health services outside of the school setting.' "

As stated in the Jurisdiction/Disposition Report, since detention, Mother had not visited Roger or attempted to contact him. Roger reported he wanted to visit Mother, and he texted her but she did not respond. According to Father, Roger stated he saw Mother on the bus one day, but the two did not speak to one another.

DCFS recommended the juvenile court sustain the petition and then terminate jurisdiction with an order awarding sole legal and physical custody of Roger to Father and granting Mother monitored visitation.

**Jurisdiction/Disposition hearing**

Mother did not appear at the May 22, 2018 adjudication/disposition hearing, which was held in the afternoon. She was at the courthouse that morning, but left for a Live Scan appointment for her new job. She authorized her counsel to proceed in her absence, and the juvenile court waived her appearance. Father was not present either.

DCFS's counsel, Roger's counsel, and Father's counsel urged the juvenile court to sustain the petition and terminate jurisdiction with an order awarding legal custody of Roger to both parents, physical custody to Father, and granting Mother monitored visitation.

Mother's counsel asked the juvenile court to dismiss the petition, arguing there was insufficient evidence showing Roger was at substantial risk of suffering physical harm or illness. In the alternative, counsel requested "joint physical custody or at least unmonitored visitation for Mother," arguing there was "insufficient risk to justify the visits being monitored."

The juvenile court sustained the petition (count b-1 quoted above), declared Roger a dependent of the court, removed him from Mother's custody, and placed him with Father. The court terminated dependency jurisdiction with an order awarding joint legal custody of Roger to both parents, physical custody to Father, and granting Mother monitored visitation.

## DISCUSSION

Mother challenges the sufficiency of the evidence supporting the jurisdiction finding against her.

"In a challenge to the sufficiency of the evidence to support a jurisdictional finding, the issue is whether there is evidence, contradicted or uncontradicted, to support the finding. In making that determination, the reviewing court reviews the record in the light most favorable to the challenged order, resolving conflicts in the evidence in favor of that order, and giving the evidence reasonable inferences. Weighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the

reviewing court." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 450-451.)

Jurisdiction under section 300, subdivision (b), requires proof "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ." (§ 300, subd. (b).) In deciding whether there is a substantial risk of serious physical harm, within the meaning of section 300, subdivision (b), courts evaluate the risk that is present at the time of the adjudication hearing. "While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824, abrogated in part on another ground in *In re R.T.* (2017) 3 Cal.5th 622, 627-629.)

The juvenile court's finding Roger was at substantial risk of suffering serious physical harm or illness as a result of Mother's neglectful conduct was not supported by sufficient evidence.[10] Nothing in the record indicates that having body odor or wearing clothes that were dirty or too small—the only circumstances alleged in the petition the juvenile court sustained—placed Roger at substantial risk of physical harm or illness. There was no nexus cited between Roger's hygiene and any medical or dental condition.[11]

_____

[10] It is undisputed Roger never actually suffered physical harm or illness as a result of Mother's conduct.

[11] As set forth above, Roger indicated Mother did not provide him with a toothbrush. However, nowhere in the record

15

The petition did not include allegations about Mother's drug use, Roger's behavioral and academic issues, or Mother's supervision of Roger—all circumstances DCFS referenced in its respondent's brief. But even if it did, such allegations would not have supported dependency jurisdiction because the evidence in the record does not show a nexus between these circumstances and a substantial risk of physical harm or illness to Roger.[12]

We reverse the jurisdiction finding because it was not supported by sufficient evidence showing Roger was at substantial risk of suffering serious physical harm or illness as a result of Mother's neglectful conduct. Because there was no basis for dependency jurisdiction, we also reverse the disposition order and the custody order the juvenile court issued.

At this juncture, the disputed custody and visitation issues are matters for the family law court to resolve. Accordingly we remand the case to the family law court for a hearing on custody and visitation. (*In re A.G.* (2013) 220 Cal.App.4th 675, 686; *In re John W.* (1996) 41 Cal.App.4th 961, 976, 977, superseded on other grounds by statute as noted in *In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 102-103 ["While remand to a court different from the one which issued the judgment appealed from is, to say the least, unusual, such a result is

---

is there evidence anyone ever observed Roger to have any dental problems.

[12] Nor did the petition include an allegation under section 300, subdivision (c) that Roger was at risk of suffering serious emotional damage as a result of Mother's conduct (e.g., her alleged indifference about his detention and failure to respond to his text messages after he was detained). Any argument regarding risk of emotional damage is not before us.

necessarily inherent in section 362.4, which expressly contemplates future proceedings in the family courts" after termination of dependency jurisdiction with a custody order].)

To avoid undue confusion and disruption in Roger's life, we order that the current custody and visitation arrangement (joint legal custody of Roger to both parents, physical custody to Father, and monitored visitation for Mother) be preserved until the family court holds a hearing and determines custody and visitation in light of current circumstances.

## DISPOSITION

The jurisdiction finding, the disposition order, and the custody order are reversed. The matter is remanded to the family court for a hearing on custody and visitation. The current custody and visitation arrangement (joint legal custody of Roger to both parents, physical custody to Father, and monitored visitation for Mother) remains in place pending the hearing in family court.


CHANEY, J.


We concur:



ROTHSCHILD, P. J.          CURREY, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Filed 1/23/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ROGER S., a Person Coming Under the Juvenile Court Law. | B290290 (Los Angeles County Super. Ct. No. 18CCJP02109) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>E.S.,<br><br>    Defendant and Appellant. | ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion filed in the above-entitled matter on December 24, 2018, was not certified for publication in the Official Reports. Pursuant to California Rules of Court, rule 8.1105(c), this opinion is now ordered published in the Official Reports.

_____

ROTHSCHILD, P. J.      CHANEY, J.      CURREY, J.