Filed 7/5/24  In re Eb.D. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Eb.D., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>E.D.,<br><br>    Defendant and Appellant. | E082572<br><br>(Super.Ct.No. J296015)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Reversed and remanded with directions.

Michelle D. Pena, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Landon Villavaso, Deputy County Counsel, for Plaintiff and Respondent.

1

E.D. (father) challenges the juvenile court's jurisdictional and dispositional findings and orders concerning his minor daughter. He contends that the record does not contain substantial evidence supporting either the jurisdictional finding against him under Welfare and Institutions Code section 300, subdivision (b)(1) (§ 300(b)(1)) or the order removing his daughter from his custody. (Unlabeled statutory references are to the Welfare and Institutions Code.) We agree that the jurisdictional finding is not supported by substantial evidence, and we accordingly remand for further proceedings.

BACKGROUND

I.  *Initial referral and investigation*

The family came to the attention of San Bernardino County Children and Family Services (CFS) in December 2022. CFS received an immediate response referral alleging general neglect and physical and sexual abuse of father's 15-year old child, Eb.D. (daughter). Daughter had just moved in with father in September, after she ran away from the home of her mother, V.C. (mother), where A.V. (stepfather), J.V. (step-uncle), and daughter's two younger half siblings also lived. Step-uncle lived with the family several days per week between August 2020 and September 2022.

Daughter reported separately to a law enforcement officer and to a social worker that the day before the referral she had a physical altercation with father. Father was upset because of an email he had received from daughter's school. When father arrived home, he told daughter that there was no one home to protect her, because paternal grandparents were not home. Father yelled at daughter and called her "'a bitch.'" He

2

approached daughter with clenched fists and pushed her, causing daughter to fall onto the couch. Daughter did not suffer any bruises or marks on her body as a result of the encounter. Daughter left home later that night without telling anyone. Daughter believed that father was under the influence during the altercation. She said that father drank daily and frequently arrived home drunk. Daughter reported that when father was drunk he would get upset, "get[] in her face," yell at her, "and ball[] his hands into fist[s]." Daughter denied that father had ever hit her before.

Daughter additionally reported that she ran away from mother's house in September 2022 because mother had verbally and physically abused her. Daughter disclosed that both stepfather and step-uncle sexually abused her when she was living with mother.

A social worker and a law enforcement officer together interviewed father. With respect to the incident the previous day, father confirmed that he confronted daughter about a message but said that daughter became upset and pushed him. Father admitted that he pushed daughter in response but said that he did not push her hard, and he denied that she fell. After he pushed daughter, she yelled, "'[H]it me, give me some bruises.'" Father later realized that daughter was not at home, and he reported her missing. Father denied that he ever physically disciplined daughter and agreed not to have any additional physical encounters with her.

Father otherwise stated that daughter's recent behavior had been problematic. According to father, daughter moved in with him months earlier because she had acted

3

aggressively toward mother.  Father believed that daughter was using drugs, because she was moody, ran away, and had a vape pen in her bedroom.  Father believed that daughter was upset because he and mother (collectively, parents) had told daughter that she would have to submit to drug testing.  Father also believed that daughter was exaggerating about what had happened when she was living at mother's house.

CFS recommended that daughter be detained from mother and placed with father.  CFS reported that father appeared to be protective of daughter and able to meet her needs.  Daughter reported feeling safe at father's home.  She felt as though she and father had a better relationship since she disclosed the sexual abuse that occurred when she lived with mother.

II.     *Detention*

In February 2023, CFS filed a dependency petition alleging that daughter was described by subdivisions (b)(1) and (d) of section 300.  As to mother, the petition alleged that daughter had suffered sexual abuse by stepfather and step-uncle while in mother's care and that mother's failure to protect daughter from such abuse had placed daughter at substantial risk of physical abuse.  The petition did not contain any allegations against father.

The court detained daughter from mother and ordered that daughter could remain in father's custody so long as father did not allow mother to have unauthorized contact with her.  The court ordered father not to have any alcohol in the home and ordered him to take a drug test that day, which father did.  The results were negative.

4

CFS filed an amended petition as to daughter's half siblings and stepfather. At a hearing in March 2023 concerning that petition, father's counsel requested that the matter be set for dismissal as to father. The court ordered CFS to file an addendum report documenting father's progress and providing a recommendation concerning whether father should be dismissed.

A social worker interviewed father in March 2023. Father worked 12-hour days as a truck driver. Father denied that he ever physically disciplined daughter or that anyone in the household used drugs or alcohol. Father admitted that he previously drank alcohol "'once in a while' and on the 'weekends,'" but he said that he had abstained since the detention hearing. Father was willing to take drug tests but said that he needed advance notice because of his work schedule. Father disclosed that he had been arrested once for driving under the influence, but he said that the charges were dismissed.

III.    *Subsequent referrals concerning father*

In May and June 2023, CFS received three referrals alleging that father was neglecting and abusing daughter. In addition, on May 19, daughter's counsel filed a section 388 petition, requesting that the court order daughter removed from father because his excessive drinking caused her to feel unsafe. The petition was supported by a declaration from Shauna D., a supervising social worker with Children's Advocacy Group, Inc. (CAG), the organization appointed to represent daughter in the proceedings. Shauna interviewed daughter in May, and daughter reported that father drank while he was driving with her in the car.

5

On May 4, 2023, CFS received a referral alleging that father was a heavy drinker and drank daily. The reporting party indicated that father was verbally aggressive toward daughter when he was intoxicated. According to the reporting party, father yelled at daughter and told her that she deserved to have been sexually abused.

CFS filed an addendum report with the court on May 9, 2023, indicating that it was considering reevaluating the appropriateness of daughter's placement with father. That day, a social worker interviewed father and daughter. Father denied that he drank alcohol and denied drinking or being intoxicated while driving with daughter. Father admitted that he previously drank alcohol excessively but said that he had stopped because he did not want to jeopardize his employment. He was willing to take a drug test.

Father believed that daughter made a false allegation against him because she perceived him as too strict. Father had recently discovered that daughter had a second cell phone, on which she had explicit photographs of herself. Daughter had been messaging with adult men and sending them nude photographs of herself. Father admitted that he yelled at daughter about the photos. Daughter had also been sneaking out of the house, and father feared that she was meeting with adult men and smoking marijuana. Father was still adjusting to having daughter live with him.

When interviewed, daughter denied that father had been drinking or that he inappropriately disciplined her. She acknowledged that she had reported to her attorney concerns about how father acted when he was upset. Daughter could not recall what she

6

said and did not recall reporting that father drove while under the influence. Daughter did not have any concerns living with father and felt safe, but she nevertheless wanted to live elsewhere because father was "very strict."

One week later, in mid-May 2023, CFS received a second referral alleging that father generally neglected daughter and emotionally abused her. The reporting party stated that father was drinking alcohol and acting verbally abusive toward daughter, who runs away from home.

A social worker made an unannounced visit to father's home. Father reported that daughter had run away from home because he was concerned about her whereabouts after school and her marijuana use. The social worker did not see any alcohol or alcohol containers "on the premises." Father showed the social worker where he stored recyclable cans. The stored cans included empty beer cans that father said belonged to paternal grandfather.

Daughter told the social worker that she continued to feel safe at home, but she admitted that she had run away three times. Daughter denied that father was drinking alcohol in the home. In response to further questioning by the social worker, daughter repeatedly just answered that she was "'fine.'"

A social worker interviewed daughter again in early June 2023. Daughter reported that her arguments with father had "calmed down" and that she had no concerns to report. She reported that no one in the home drank alcohol.

In late June 2023, CFS received a referral alleging general neglect and sexual abuse. Daughter—then almost 16 years old—had sex with her 18-year-old boyfriend, Daniel, in father's home. Father hit Daniel, and daughter struck father. She was attempting to stop father from attacking Daniel.

A social worker interviewed father, who confirmed that he caught daughter having sex with an adult man (Daniel) in the house in the middle of the night. Father admitted that he physically confronted Daniel, whom father restrained until law enforcement arrived. Daughter hit father in the eye. Daughter told father that Daniel was her boyfriend, whom she had been dating for a while. Law enforcement arrested Daniel but released him.

In August 2023, a social worker interviewed daughter. Daughter reported feeling safe at father's home, and she wanted to continue living with father. Daughter was playing on the high school volleyball team and attended practice daily. She had not seen father drink alcohol and denied that father drove while intoxicated.

With respect to the night that father discovered daughter in bed with Daniel, daughter admitted that she snuck Daniel into the house and had sex with him. Daughter admitted that Daniel was 18 years old. Daughter accidentally struck father in the eye while attempting to protect Daniel.

IV. *Daughter's section 388 petition*

Several days after CFS received the second May 2023 referral, daughter filed a petition under section 388 requesting to be removed from father and placed with a

8

relative. The petition alleged that father kept alcohol in the house in violation of the court's order and that daughter told Shauna (CAG's social worker) that father's frequent drinking made daughter feel unsafe.

The petition was supported by a declaration from Shauna. Daughter disclosed to Shauna that father drank nearly every day and that his behavior changed when he drank. When father was drinking, he yelled, started fights with daughter and paternal grandfather, and acted aggressively. Father made frequent trips to the liquor store when he was drinking. Father drank beer while he was driving with daughter in the car. On one occasion when father was drinking alcohol while driving with daughter in the car, daughter jumped out of the moving car and ran away. Daughter said that in early May 2023 she had reported father's drinking to the social worker, but father became angry and yelled at her when he read about the disclosure in a CFS report. Father instructed daughter not to tell anyone about what he did.

CFS filed a response to the section 388 petition in August 2023. CFS recommended that the court deny the petition. In support of that recommendation, CFS chronicled its efforts to investigate the three referrals received in May and June. CFS found the allegations from all three referrals to be unfounded. Father took three drug tests in May and June, and the results for all of the tests were negative.

CFS concluded that it was in daughter's best interest to remain in father's home. CFS believed that father had been honest about adjusting to being a full-time parent and not being skilled in parenting a teenager who was exhibiting "delinquent" behavior.

9

Father had communicated with CFS about his concerns about daughter and indicated that he was willing to change his parenting techniques. In addition, CFS reported that father was attending individual counseling and parenting classes. Father and daughter were participating in family therapy to improve their relationship. CFS did not have any concerns about father's drinking, given that father submitted to drug tests and consistently tested negative.

In August 2023, the court held a hearing on whether to set a full evidentiary hearing on the section 388 petition. On the day of the scheduled hearing, CFS filed an addendum report. CFS recommended that daughter remain in father's home and that father receive family maintenance services. Father continued to participate in individual therapy and parenting classes. Father took a drug test on August 15, and the results were still pending when CFS filed its addendum report. The court continued the hearing on the petition to October. At the request of daughter's counsel and without opposition from CFS, the court ordered father not to have alcohol in his home and not to use corporal punishment.

V.    *Allegations against father*

Before the court held the continued hearing on daughter's section 388 petition, CFS filed an amended petition containing a jurisdictional allegation against father, and the accompanying detention report recommended that daughter be detained from father. Father did not show up for a random drug test in mid-September 2023 because of an alleged conflict with his work schedule. The next day, father took an on-demand drug

10

test, and it was positive for ethanol. A social worker asked father about the positive result, and he admitted "to drinking 'Mike's Hard Lemonade' on the morning of his drug test."

A social worker expressed to father that CFS was concerned about his drinking and wanted to remove daughter from his home. Father agreed to temporary detention of daughter by CFS. CFS recommended that the court order services for father.

As later amended, the petition alleged under section 300(b)(1) that daughter had suffered or was at substantial risk of suffering serious physical harm as a result of father's failure or inability to supervise or adequately protect her.[1] The petition contained the following specific allegation: Father "has a substance abuse issue, specifically alcohol, which places [daughter] at risk of abuse and/or neglect."

The court held a detention hearing on September 28, 2023. Father submitted on the recommendation to detain daughter from him. Father's counsel informed the court that father "recognize[s] the issues and is working on them." The court found that CFS made a prima facie showing that daughter came within section 300, and the court ordered daughter detained. The court ordered father to drug test that day and notified him that failure to appear for the test would be considered a positive result.

---

[1]     The petition filed in September 2023 contained an allegation against father under subdivision (g) of section 300. At the detention hearing, CFS stated that it had alleged the wrong subdivision and would amend the petition to allege jurisdiction under subdivision (b) of section 300, which CFS later did.

11

CFS filed addendum reports in October and November 2023. CFS reported that father did not show up for random drug tests on September 27 and October 2. As to the September 27 test, father said that there was a work conflict. He also did not show up for the test ordered at the detention hearing.[2] Father took a drug test on October 25, and the results were negative. In late September, CFS referred father to outpatient substance abuse treatment services.

VI.   *Jurisdiction and disposition*

In November 2023, the court held a contested jurisdiction and disposition hearing. CFS introduced into evidence detention reports, dependency petitions, jurisdiction and disposition reports, and numerous addendum reports. CFS did not introduce daughter's section 388 petition but did introduce CFS's opposition to that petition. Father's counsel argued that the jurisdictional allegation was not true and that the case involved "substance abuse without more." Father asked the court to return daughter to father's care with family maintenance services. The court found true the allegations against both father and mother. The court removed daughter from both parents' custody and ordered reunification services.

---

[2]   There is some discrepancy in the record about whether father took a drug test on the day of the detention hearing. In the October 2023 report, CFS reported that the test results from the day of the detention hearing were pending, but in the November report CFS reported that father did not show up for that test. A document submitted by the laboratory states that father did not show up for a test on September 28, 2023.

12

DISCUSSION

Father argues that the evidence introduced at the jurisdiction hearing was not sufficient to support the jurisdictional finding against him.  We agree.[3]

Section 300(b)(1) allows the juvenile court to assert jurisdiction when a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" a parent's failure or inability "to adequately supervise or protect the child."  (§ 300, subd. (b)(1)(A) (§ 300(b)(1)(A).)  Under section 300(b)(1)(A), a parent's substance-related issues can contribute to a finding that jurisdiction exists because of the parent's "'failure or inability of the child's parent or guardian to adequately supervise or protect the child.'"  (*In re N.R.* (2023) 15 Cal.5th 520, 540, fn. 9 (*N.R.*).)[4]

A jurisdictional finding under section 300(b)(1) requires that CFS prove by a preponderance of the evidence the following elements:  "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a

---

**3**    CFS contends that father's appeal is moot because mother does not appeal the jurisdictional findings against her.  The argument lacks merit because the jurisdictional finding against father serves as the basis for the removal of daughter from father's custody and father challenges that dispositional order.  The appeal accordingly is not moot.  (*In re D.P.* (2023) 14 Cal.5th 266, 283-284.)

**4**    Subdivision (b)(1)(D) of section 300 provides for jurisdiction if the child has suffered or is at substantial risk of suffering serious physical harm on the basis of "[t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."  Father mistakenly contends that the petition contained an allegation under that subdivision.  Although the allegation against father concerns his substance abuse, a parent's "substance-related issues may contribute to a finding that dependency jurisdiction exists" under section 300(b)(1)(A) because of the parent's failure to protect or adequately supervise the child.  (*N.R.*, *supra*, 15 Cal.5th at p. 540, fn. 9.)  That is what CFS alleged as to father.

13

substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.) The child must be subject to a defined risk of harm at the time of the jurisdiction hearing. (*In re Roger S.* (2018) 31 Cal.App.5th 572, 582; *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1389, abrogated on another ground in *In re R.T.* (2017) 3 Cal.5th 622, 628-630 (*R.T.*).) The juvenile court "'need not wait until a child is seriously abused or injured to assume jurisdiction and take steps necessary to protect the child [citation].'" (*In re J.A.* (2020) 47 Cal.App.5th 1036, 1048.) Evidence of a parent's past conduct may be probative of current risk, but in order to establish the existence of "a defined risk of harm at the time of the hearing, there 'must be some reason beyond mere speculation to believe the alleged conduct will recur.'" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146; *In re G.Z.* (2022) 85 Cal.App.5th 857, 877.)

"'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.'" (*R.T.*, *supra*, 3 Cal.5th at p. 633.) "'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*Ibid.*)

No evidence introduced at the jurisdictional hearing in November 2023 showed that daughter was at substantial risk of physical harm because of father's drinking at that time. Nearly one year before the jurisdictional hearing, father pushed daughter, and daughter believed that father had been drinking when he did that. Daughter reported that

14

father had otherwise never struck her. The record does not contain any evidence that father either used or threatened violence against daughter ever again, or that daughter feared that father would act violently toward her. On the contrary, daughter consistently reported feeling safe at father's home. As recently as August 2023, daughter reported not only that she felt safe living with father but that she wanted to live with him. In sum, the evidence showed only that father pushed daughter once, nearly one year before the jurisdictional hearing, and there is no evidence that she was physically injured or at risk of physical injury from that one incident. It is not reasonable to infer from the single incident of father pushing his 15-year-old daughter 11 months before the jurisdictional hearing that there was a substantial risk that he would physically injure her in the future. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1025-1026 (*J.N.*).) Moreover, there was no evidence admitted at the jurisdictional hearing from which it could be inferred that father's drinking had otherwise placed daughter at substantial risk of harm.[5]

CFS contends that other evidence shows that daughter was at substantial risk of physical harm, namely, daughter's report in December 2022 that when father was drunk

[5] Father argues that in determining whether jurisdiction existed the juvenile court may have considered daughter's section 388 petition, which contained evidence that father drove under the influence with daughter in the car. Daughter's section 388 petition and supporting declaration were not admitted at the jurisdictional hearing, and the record contains no indication that the juvenile court considered them at that hearing. The court did not mention those documents or any information contained therein when making its findings. Because those documents were not admitted at the jurisdictional hearing, they are irrelevant to our review of the sufficiency of the evidence to support the court's jurisdictional findings. (See, e.g., *Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1159-1160.) We accordingly need not address father's argument that consideration of those documents by the juvenile court would have constituted error.

15

he would "get[] in her face," yell at her, "and ball[] his hands into fist[s]." We disagree. As with the pushing incident that occurred 11 months before the jurisdictional hearing, daughter's statements in December 2022 do not support the finding that daughter was at risk of physical harm in November 2023. Considered in light of the whole record, the evidence that father yelled in daughter's face and balled his hands into fists does not support a reasonable inference that daughter was at risk of physical harm, let alone substantial risk. Father's conduct did not include the use of any physical force against daughter. There is no evidence that daughter or anyone else was concerned that father's yelling and balling his hands into fists would lead him to use force against daughter. Moreover, in the 11 months between daughter's report of that behavior and the jurisdictional hearing, daughter continued to reside with father and did not report that father ever acted that way again or ever used physical force with her. Thus, as with the single incident of father pushing daughter 11 months before the jurisdictional hearing, there is no evidence that father's past behavior of yelling in daughter's face with closed fists was likely to recur or posed a substantial risk of physical injury. (*J.N.*, *supra*, 181 Cal.App.4th at pp. 1025-1026.) The evidence thus is not sufficient to support the finding that daughter was at substantial risk of physical harm as a result of father's substance abuse.

CFS additionally argues that even if there was not substantial evidence that daughter was at risk of harm as a result of father's alcohol use, there was substantial evidence that daughter was at substantial risk of physical harm as a result of father's

16

failure or inability to protect her regardless of his substance abuse. In support of that contention, CFS points to the evidence that daughter ran away from father's home, father caught daughter having sex with an 18-year-old, and father found a vape pen in daughter's room.

CFS's argument lacks merit. The only allegation contained in the petition against father was that daughter was at risk because of father's substance abuse. The juvenile court sustained the allegation as pled, thus finding that daughter was at substantial risk of serious physical harm as a result of father's substance abuse. The juvenile court did not amend the petition to conform to proof. The petition thus did not contain any allegation that father's inability to supervise and protect daughter—independent of father's substance abuse—placed daughter at substantial risk of physical harm. (*In re I.S.* (2021) 67 Cal.App.5th 918, 927 ["A juvenile court may amend a dependency petition to conform to the evidence received at the jurisdiction hearing to remedy immaterial variances between the petition and proof"].) Father therefore did not have notice or an opportunity to be heard on such an allegation, to which he was entitled. (*Ibid.*) Nor did the juvenile court make a true finding on the unpled allegation. We accordingly cannot consider whether substantial evidence supported the juvenile court's jurisdiction on a ground on which it did not take jurisdiction.

In any event, the record does not contain substantial evidence that daughter was at substantial risk of physical harm as a result of father's failure to supervise or protect her independent of his substance abuse. There is no evidence in the record about what

17

happened when daughter ran away, so there is no evidence about where she went, how long she stayed away, or whether any relatives knew of her whereabouts. Given the lack of evidence about the circumstances of daughter's episodes of running away, there is no evidence that they placed her at substantial risk of physical harm. Moreover, although father suspected that daughter was smoking marijuana, there is no evidence that he ever confirmed that suspicion. There is no evidence that the vape pen that father found in daughter's room was used for marijuana. In addition, father took away daughter's cell phones after discovering that she had explicit photographs of herself and was texting them to adult men. He therefore responded to the discovery of daughter's inappropriate use of her cell phone by mitigating the risk that it would recur. Thus, even if CFS had pled that daughter was at substantial risk of physical harm as result of father's inability to protect or supervise her independent of his substance abuse, the evidence would still be insufficient to support a jurisdictional finding on that basis.

In sum, the record of the jurisdictional hearing does not contain sufficient evidence to support a jurisdictional finding against father. And because the jurisdictional finding against father was the basis for removal of daughter from father's custody at disposition, we must reverse the dispositional findings and orders as well.

DISPOSITION

The dispositional findings and orders are reversed, and the true finding on the jurisdictional allegation against father under section 300(b)(1)(A) is vacated with

18

directions to dismiss the allegation.  The matter is remanded with directions to hold a new dispositional hearing as to daughter.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

CODRINGTON
Acting P. J.

FIELDS
J.