Filed 7/18/24; certified for publication (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

In re S.R. et al., Persons Coming Under
the Juvenile Court Law.

|  |  |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082812 |
| Plaintiff and Respondent, | (Super.Ct.No. DPRI2300275) |
| v. | OPINION |
| J.R., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin,
Judge.  Dismissed in part, reversed in part, with directions.

Tracy M. DeSoto, under appointment by the Court of Appeal, for Defendant and
Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie Jarvi, Deputy
County Counsel, for Plaintiff and Respondent.

1

J.R. (mother) appeals from the juvenile court's dispositional findings and orders concerning two of her children. We dismiss as abandoned the appeal as to one of the children because mother raises no arguments on appeal as to that child.

With respect to the other child, mother challenges the sufficiency of the evidence supporting the jurisdictional findings against her under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j) (unlabeled statutory references are to this code). Mother also challenges the sufficiency of the evidence supporting removal of that child and contends that the juvenile court abused its discretion by ordering supervised visitation. We agree that the jurisdictional findings are not supported by substantial evidence, and we accordingly reverse with directions.

BACKGROUND

I.     *Family background*

Mother has four minor children: S.R. (female; born in November 2005) (hereafter daughter), Dominic R. (male; born in June 2008), Brianna L. (female; born in 2014), and Ethan L. (male; born in 2015) (collectively, the children). (We refer to Brianna and Ethan collectively as "the half siblings.") In May 2023, mother and the children lived with Brandon, who is the half siblings' father. Mother and Brandon were engaged. Brian W. is daughter's biological father, and Richard R. is Dominic's biological father. The

2

half siblings are not parties to this appeal, and mother does not make any arguments related to daughter.[1]

II.    *Dependency history*

In January 2022, the Riverside County Department of Public Social Services (the Department) received a referral concerning the family, alleging general neglect, sexual abuse, and at-risk sibling abuse.  Daughter was experiencing homicidal ideation and placed on a section 5585 hold.[2]  Daughter initially reported that while she was in the sixth grade Brandon "put his hands down her pants, groped her genitalia and attempted to pull down her pants while she was laying down."  Daughter suspected that mother knew what happened because mother advised daughter to wear clothing that covered her body.  Daughter did not want to disclose what happened, because mother experienced stress-related seizures and relied on Brandon financially.

Daughter later denied that she had been inappropriately touched by Brandon.  Mother reported that she was not concerned about Brandon sexually abusing daughter, because they were never alone together.  Mother and daughter disclosed that an ex-boyfriend of daughter's raped daughter during the summer of 2021.  Mother said that daughter was enrolled in services to address mental health concerns.

---

[1]    Daughter turned 18 years old the day after the jurisdiction and disposition hearing.  Mother's notice of appeal includes daughter, but mother does not make any argument in her briefs related to daughter.  We therefore dismiss as abandoned mother's appeal as to daughter.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

[2]    The record mistakenly describes the hold as a "5150 hold."  Section 5585 governs the 72-hour mental health evaluation hold of a minor (§ 5585.20), which daughter was in January 2022.

Two months later, in March 2022, the Department received another referral, alleging physical abuse and concerns of at-risk sibling abuse. Daughter reported that mother hit daughter in the face and otherwise hit and kicked daughter several times. Daughter said that "the physical abuse ha[d] been continuous since she was 9 years old, and she was the only one physically abused." Mother did not allow the social worker to speak with the other children and believed that the Department was lying about the new allegations. A law enforcement officer visited the residence and spoke with mother and daughter. Daughter denied that mother hit her in the face.

In April 2022, the Department received an immediate response referral with concerns of sexual abuse. Daughter was placed on a section 5585 hold. Daughter cut her thigh with a razor blade, but the cut was superficial. Daughter reported to someone that mother's fiancé (Brandon) was inappropriately touching her and had touched her approximately 50 times since she was in the sixth grade. Daughter said that she previously lied to the social worker when she denied that Brandon touched her. Daughter said that none of her half siblings was being abused. Mother refused to cooperate with the Department and did not allow the other children to be interviewed.

Daughter spoke with a social worker and again denied the allegations. Daughter did not understand why the report had been made. Daughter felt safe at home. Both referrals were closed as unfounded.

III.    *Present investigation*

The family came to the attention of the Department again in May 2023. Daughter, who was then 17 years old, reported that Brandon sexually molested her. It started when she was eight years old and continued until she was 14 years old. Daughter lied when she previously said that Brandon did not sexually abuse her. Daughter was ready to disclose the truth.

A social worker visited the family's home unannounced. Daughter was not home. The social worker spoke with mother and Brandon together and outside of the residence at their request. Mother and Brandon refused to allow the social worker to enter the home or to speak with the children. Mother reported that since the referrals in 2022 daughter had received some therapy.

The social worker asked law enforcement to perform a wellness check on the children, which law enforcement attempted. Mother and Brandon brought the half siblings to the doorway but did not allow law enforcement to speak with them.

Two weeks after the initial referral, daughter texted the social worker that Brandon sexually molested her over the course of six years until she was 14 years old. An informant reported that daughter had previously received behavioral health services but only attended three therapy sessions in February and March 2022, because mother pulled daughter out of therapy.

The social worker attempted to interview daughter at school, but daughter attended school online. The social worker did interview Dominic and the half siblings at school. Dominic reported that he had not been touched inappropriately, and he denied having any knowledge about his half siblings, including daughter, being touched inappropriately. Dominic felt safe at home and reported that there was not any domestic violence at the house. Brianna understood what her private parts were and denied that she had ever been touched there or that anyone had ever asked to touch her there. Brianna also denied having any knowledge of any of her siblings being touched. Brianna felt safe at home. Ethan denied that anyone had touched his private parts.

In July 2023, daughter was admitted to Loma Linda Behavioral Medicine Center (the behavioral center). Daughter had attempted to commit suicide. Daughter disclosed more details about the sexual abuse by Brandon, reporting that Brandon started touching her breasts when she was eight years old and digitally penetrating her when she was 11. Daughter also reported that mother verbally abused her from the ages of six through 14. Daughter reportedly attempted to commit suicide over 30 times "'in relation to the abuse she ha[d] endured.'" The behavioral center's medical staff did not believe that daughter had received proper psychiatric care, because daughter was not enrolled in long-term outpatient treatment.

On the same day that daughter was admitted to the behavioral center, mother called law enforcement to report that Brandon was missing. Law enforcement found Brandon's car with duct tape around the exhaust pipe, plastic tubing routed into a rear

6

window, and a letter addressed to Brianna inside of the car. Mother discovered that Brandon had purchased a one-way ticket to Hawaii. Hawaiian law enforcement found Brandon at the airport and transported him to have his mental health evaluated. Brandon returned to California several days later.

In mid-July 2023, the Department received another referral from the behavioral center alleging general neglect and sexual abuse of daughter. Daughter was enrolled in the behavioral center's partial hospitalization program. Daughter explained that she had attempted to commit suicide because Brandon moved in with the family again. Mother had required Brandon to take a polygraph test, which he failed. Daughter surreptitiously recorded Brandon talking to her about that test and asking daughter to lie to mother and tell mother that daughter "was manic." Daughter overdosed after she recorded Brandon. Daughter was staying with Dominic's father, Richard.

Law enforcement conducted a forensic interview of daughter in late July 2023. Daughter said that when she was between eight and 15 years old Brandon touched her breasts and vagina, kissed her on the lips, masturbated to her while she slept, and pressed his penis against her back. Daughter described one incident in which Brandon rubbed her thigh and vagina while she was sleeping but stopped when daughter "turned around and she was able to move her sister, Brianna (approximately 5 years old) in front of her as a means to block him." Mother was present in the residence when Brandon touched daughter, but daughter said that mother was downstairs on her phone and was distracted.

The interviewer asked daughter if she was "worried that something like this has happened to somebody else that you know with Brandon." Daughter answered that she was worried about Brianna, because Brianna was eight years old, which was the age at which Brandon started sexually abusing daughter. Asked whether she was worried about anyone else, daughter replied, "Ethan, but not too much because he's a boy but I doubt it as well but I always have that worry." Daughter explained that Ethan was one year younger than Brianna. Daughter was not worried about Brandon sexually abusing anyone else.

In June 2023, daughter told Richard and his wife what happened to her. Richard helped daughter tell mother. Daughter wrote a note about what happened and showed it to mother. Mother cried. She informed daughter that if daughter's account was truthful then "'you know we have to move, right?'" Daughter felt that mother was mad at her after the disclosure.

A social worker spoke with daughter after the forensic interview. Daughter reiterated that Brandon started molesting her when she was 8 years old, but she newly disclosed that it continued "until present [when she was 17 years old], although more rarely now." Daughter said that she had previously recanted the reports of abuse because she did not want "'to ruin'" mother's life.

The social worker contacted mother, but mother refused to speak on the phone. Mother did not allow the social worker to speak with the other children. Mother confirmed that daughter was living with Richard. Mother became upset and

argumentative when the social worker asked to speak with the other children, and she did not allow it.

The social worker spoke with Richard, who described maintaining an active parental relationship with daughter even though she was his stepdaughter. Richard cared for daughter when she was a toddler. Richard had learned about the sexual abuse allegations about two months earlier. Daughter told Richard that she previously recanted allegations because she did not want the half siblings to grow up without a father.

In late July 2023, the Department took protective custody of all four children pursuant to a warrant. The children were temporarily placed with Richard.

IV.  *The allegations and the initial hearing*

In August 2023, the Department filed a dependency petition as to all four children, with jurisdictional allegations against mother. The petition alleged that all four children were at substantial risk of serious physical harm under subdivision (b)(1) of section 300 (§ 300(b)(1)) as follows: "The mother knew, or reasonably should have known, her significant other, [Brandon], sexually abused the child, [daughter], in the family home. Further, the mother has been unwilling to recognize the sexual abuse occurring in the home and failed to intervene and protect the children in the home." With respect to daughter, the petition also contained additional allegations of emotional and sexual abuse under subdivisions (c) and (d) of section 300. As to Dominic and the half siblings, the petition also contained an allegation under subdivision (j) of section 300 (§ 300(j)),

alleging that "[t]he children's half sibling, [daughter], has been abused and/or neglected as defined in subdivision 300 (d) of the Welfare and Institutions Code, and there is a substantial risk that these children will suffer similar harm."

At the initial hearing, the juvenile court detained the children from mother. As to Dominic, the court found that a prima facie showing had been made that he came within the court's jurisdiction under subdivisions (b)(1) and (j) of section 300.

## V.     *Jurisdiction and disposition*

The Department filed a jurisdiction and disposition report in August 2023. A social worker described interviews from that month with the children, Richard, and mother. Dominic denied that he had been sexually abused and reported that he would tell Richard if anything happened. Brianna, who was then nine years old, also denied that she had been sexually abused. Ethan is autistic and was unable to provide clear answers to most questions.

Daughter stated that mother previously stopped daughter from attending therapy because daughter "was disclosing too much information and [the Department] kept intruding." Daughter had been hospitalized three times for having attempted suicide.

Mother denied the allegations that Brandon had sexually abused daughter when she was in mother's care and custody or that mother had any knowledge of the abuse. Mother explained that daughter was mad because Brandon had thrown some of her food away, so daughter went to Richard's house, where she wrote a letter describing the abuse.

10

Mother read the letter and realized that there "were parts in the letter that did not even happen." Mother searched daughter's computer and found that daughter was on a website in which other children were disclosing abuse they experienced. Daughter also posted about abuse that she claimed to have experienced. Mother made daughter take a lie detector test, which mother said that daughter failed. Daughter told mother that she lied in her posts about being abused because she wanted to relate to the other children online.

Mother disagreed with the section 300(j) allegation that Dominic, Brianna, and Ethan are at risk of "similar abuse" to the sexual abuse that daughter allegedly suffered, which was described in the allegation under section 300, subdivision (d) (§ 300(d)). Mother said that she knew "nothing ha[d] happened to her children. She is always home and she is aware of everything that occurs in the home." Asked about the same allegation, Richard explained that daughter told him that she did not know whether her half siblings had been sexually abused. None of the children disclosed anything to him. Daughter told Richard that Brandon bathed Brianna and Ethan.

The court held the contested jurisdiction and disposition hearings in November 2023, starting two days before daughter's 18th birthday. The Department filed an addendum report for the hearing. In interviews for that report, Richard and daughter described an incident that occurred in early October 2023. He was driving with all of the children in the car, and Brianna was on speaker with Brandon. Richard asked Brianna to

11

end the call. Mother got on the phone and was angry. Mother said that she and Brandon could talk to their children on the phone whenever they wanted. Daughter informed mother that hearing Brandon's voice triggered her. Mother responded, "'I can't believe you would say that, I have rights as a parent and I can't believe you would do this.'" Richard ended the call. In late October, a social worker spoke with mother, who "stated that this whole case is based off of a lie from the investigating worker, and her children are being emotionally abused by the Department."

At the hearing, the court sustained the allegations under subdivisions (b)(1), (c), and (d) of section 300 as to daughter. As to Dominic and the half siblings, the court sustained the allegations under section 300(b)(1) and section 300(j). The court removed Dominic from mother, granted Richard sole physical and legal custody, ordered monitored visitation for mother, and closed Dominic's case.

## DISCUSSION

Mother contends that there is insufficient evidence to support the jurisdictional findings as to Dominic under section 300(b)(1) and section 300(j). We agree.

Section 300 specifies the circumstances under which a juvenile court can assert dependency jurisdiction over a child. (*In re Luke M.* (2003) 107 Cal.App.4th 1412, 1420.) Under section 300(b)(1), the juvenile court may take jurisdiction over a child if the child has suffered or is at substantial risk of suffering serious physical harm as a result of the parent's failure or inability "to adequately supervise or protect the child." (§ 300,

12

subd. (b)(1)(A) (§ 300(b)(1)(A)).)  A jurisdictional finding under section 300(b)(1)(A) requires the Department to prove the following elements by a preponderance of the evidence:  "(1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness." (*In re L.W.* (2019) 32 Cal.App.5th 840, 848.)  The child must be subject to a defined risk of harm at the time of the jurisdiction hearing.  (*In re Roger S.* (2018) 31 Cal.App.5th 572, 582.)  But "section 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction."  (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).)

Section 300(j) allows the juvenile court to take jurisdiction over a child if that "child[] has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i) [of section 300], and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."  Section 300(j) does not require that the subdivision under which the sibling is at risk be the same subdivision under which the child described by section 300(j) is at risk.  (*I.J.*, *supra*, 56 Cal.4th at p. 774.)  Section 300(j) further instructs:       "The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."  Section 300(j) affords the court "'greater latitude to exercise jurisdiction as to a child

13

whose sibling has been found to have been abused than the court would have in the absence of that circumstance.'" (*I.J.*, at p. 774.) In general, the more egregious the abuse experienced by the sibling, "the more appropriate for the juvenile court to assume jurisdiction over the siblings" under section 300(j). (*I.J.*, at p. 778.)

"'In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them.'" (*In re R.T.* (2017) 3 Cal.5th 622, 633.) "'In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court.'" (*Ibid.*)

The record contains no evidence that Dominic was at substantial risk of physical harm under section 300(b)(1). The record does not contain any evidence that mother's failure to intervene and protect daughter from being sexually abused by Brandon placed Dominic at any risk of physical harm. There is no evidence that Brandon sexually abused Dominic. Nor is there any evidence that Brandon ever physically harmed or was likely to physically harm Dominic in any way. Dominic reported that he felt safe living with mother and Brandon. It is not reasonable to infer from mother's failure to protect daughter from being sexually abused by Brandon that Dominic was at risk of any physical harm, let alone a substantial risk.

There also is no evidence in the record supporting the jurisdictional finding under section 300(j) as to Dominic. Although section 300(j) itself allows a juvenile court to consider whether a child "'will be harmed under subdivision (a), (b), (d), (e) or (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling'" (*I.J.*, *supra*, 56 Cal.4th at p. 774), the section 300(j) allegation in the petition in this case was more specific. The allegation reads: "The children's half sibling, [daughter], has been abused and/or neglected as defined in subdivision 300 (d) of the Welfare and Institutions Code, and there is substantial risk that these children will suffer *similar harm*." (Italics added.) The Department thus alleged that Dominic was at substantial risk of suffering from sexual abuse under section 300(d), similar to what daughter had experienced; it did not allege that he was at risk of being harmed as described in subdivisions (a), (e), or (i) of section 300.

There is no evidence that at the time of the jurisdiction hearing Dominic was at risk of being sexually abused. Dominic was between five and six years old and residing with Brandon and mother when Brandon started molesting daughter. There is no evidence that Brandon ever touched Dominic inappropriately in the ensuing nine years, during which they continued to reside together. Moreover, Brandon started sexually abusing daughter when she was eight years old, but Dominic was 15 years old when the jurisdiction hearing was held. He accordingly was not nearly as vulnerable as daughter was when the molestation began. There also is no evidence that Brandon had any propensity to sexually abuse male children, particularly older teenage boys. Moreover,

15

daughter expressed concerns about Brandon sexually abusing the half siblings only. She did not express any like concern about Dominic. In sum, the record does not contain any evidence from which a reasonable inference can be drawn that at the time of the jurisdiction hearing there existed a substantial risk that 15-year-old Dominic would be sexually abused by Brandon. There accordingly was no evidence supporting the jurisdictional allegation as to Dominic under section 300(j).

The Department's arguments to the contrary are unavailing. In arguing that substantial evidence supports the section 300(b)(1) finding, the Department focuses exclusively on the evidence that mother knew or should have known that Brandon was sexually abusing daughter. But the Department does not explain how that evidence demonstrates that Dominic was at substantial risk of physical harm as a result of mother's failure to protect daughter from sexual abuse.

To support the contention that the true finding under section 300(j) is supported by substantial evidence, the Department relies on *I.J.*, *supra*, 56 Cal.4th 766. In *I.J.*, the father sexually abused and raped his 14-year-old daughter, I.J., throughout the three years immediately preceding the jurisdiction hearing. (*Id.* at p. 771.) I.J. had four younger siblings, including a younger sister, twin 12-year-old brothers, and a seven-year-old brother. (*Ibid.*) The dependency petition alleged that the father's sexual abuse of I.J. placed all of the children at risk of harm, and the petition contained allegations as to the siblings under subdivisions (b), (d), and (j) of section 300. (*I.J.*, at p. 771.) The juvenile

court sustained the allegation that "'[t]he sexual abuse of [I.J.] by the father endangers [I.J.'s] physical health and safety and places the child and the child's siblings . . . at risk of physical harm, damage, danger, sexual abuse and failure to protect.'" (*Ibid.*) There was no evidence that the sons were sexually abused or otherwise mistreated, and the sons did not witness any of the abuse and were unaware of it until the dependency proceeding. (*Ibid.*) On appeal, the father argued that the evidence that he sexually abused I.J. did not support the juvenile court's assertion of jurisdiction over the sons. (*Id.* at p. 772.)

The Supreme Court rejected the father's argument and concluded that substantial evidence supported the assertion of jurisdiction over the sons under section 300(j).[3] (*I.J.*, *supra*, 56 Cal.4th at p. 772.) *I.J.* emphasized that section 300(j) did "'not state that its application is limited to the risk that the child will be abused or neglected as defined in the same subdivision that describes the abuse or neglect of the sibling. Rather, subdivision (j) directs the trial court to consider whether there is a substantial risk that the child will be harmed under subdivision (a), (b), (d), (e) or (i) of section 300, notwithstanding which of those subdivisions describes the child's sibling.'" (*I.J.*, at p. 774, italics omitted.) Applying that directive, the Supreme Court found that the serious and prolonged nature of the father's sexual abuse of I.J. coupled with the evidence that the abuse occurred while the other children were living in the same home "and could easily have learned of or even interrupted the abuse" "support[ed] the juvenile court's

---

**3** Because the court found the section 300(j) allegation supported by substantial evidence, the court did not address the sufficiency of the evidence supporting the other alleged grounds for jurisdiction. (*I.J.*, *supra*, 56 Cal.4th at pp. 773-774.)

17

finding that the risk of abuse was substantial as to all the children," including the sons. (*Id.* at p. 778.)  *I.J.* assumed that the risk of sexual abuse was greater as to the younger daughter than as to the sons.  (*Id.* at p. 779.)  The court nevertheless noted that it did "not mean the risk to the sons is nonexistent or so insubstantial that the juvenile court may not take steps to protect the sons from that risk," especially given the severe and prolonged sibling abuse in that case.  (*Id.* at p. 780.)

I.J. cautioned that by upholding the assertion of jurisdiction under section 300(j) over the sons it was "not holding that the juvenile court is compelled, as a matter of law, to assume jurisdiction over all the children whenever one child is sexually abused." (*I.J.*, *supra*, 56 Cal.4th at p. 780.)  *I.J.* emphasized that it was merely holding that "the evidence in this case supports the juvenile court's assertion of jurisdiction." (*Ibid.*)

The Department's reliance on *I.J.* is misplaced.  *I.J.* is distinguishable from the present case in that Dominic was 15 years old at the time of the jurisdiction hearing.  He thus was several years older than the older sons in *I.J.*  (*I.J.*, *supra*, 56 Cal.4th at p. 771.)  Given his age, Dominic was less vulnerable to sexual abuse than the sons in *I.J.*

Moreover, the section 300(j) allegation in *I.J.* was not limited like the allegation here.  In *I.J.*, the juvenile court found that the father's sexual abuse of his daughter placed the siblings "'at risk of physical harm, damage, danger, sexual abuse and failure to protect.'" (*I.J.*, *supra*, 56 Cal.4th at p. 771.)  Thus, the juvenile court in *I.J.* could consider whether there was a substantial risk that the siblings would be harmed under

18

subdivision (a), (b), (d), (e), or (i) of section 300, not just whether the siblings were at substantial risk of sexual abuse under section 300(d). (*I.J.*, at p. 774.) The Supreme Court did not uphold the section 300(j) finding on the basis of risk that the siblings would be sexually abused. (*I.J.*, at p. 780.) Rather, in concluding that substantial evidence supported the finding, the Supreme Court noted that the sexual of abuse of the daughter placed the other children at risk because the other children were at home when the abuse occurred and could have learned of or interrupted the abuse. (*Id.* at p. 778.) The harm that the sons would have experienced by learning of the abuse would not constitute sexual abuse as defined by section 300(d).

In contrast to the section 300(j) allegation in *I.J.*, the juvenile court in the present case was limited to asserting jurisdiction over Dominic under section 300(j) if and only if the court found that he was at substantial risk of sexual abuse. And as we have explained, there is no evidence that 15-year-old Dominic was at risk of being sexually abused.

In sum, the record does not contain sufficient evidence to support the jurisdictional findings under section 300(b)(1) and section 300(j) against mother as to Dominic. Because the jurisdictional findings against mother were the basis for removal of Dominic from mother's custody at disposition, we must reverse the dispositional findings and orders as well.

19

## DISPOSITION

The appeal as to S.R. is dismissed as abandoned. The dispositional findings and orders as to Dominic are reversed, and the true findings on the jurisdictional allegations as to Dominic under section 300(b)(1)(A) and section 300(j) are vacated with directions to dismiss the petition as to Dominic.

MENETREZ _____

J.

We concur:

CODRINGTON _____

Acting P. J.

FIELDS _____

J.

20

CERTIFIED FOR PUBLICATION
COURT OF APPEAL -- STATE OF CALIFORNIA
FOURTH DISTRICT
DIVISION TWO

| | |
|---|---|
| In re S.R. et al., Persons Coming Under the Juvenile Court Law. | E082812 |
| _____ | (Super.Ct.No. DPRI2300275) |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, <br>   Plaintiff and Respondent, <br>   v. <br> J.R., <br>   Defendant and Appellant. | The County of Riverside <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |
| _____ | |

THE COURT

The request for publication filed July 29, 2024, is GRANTED.  The opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c).  IT IS ORDERED that the opinion filed in this matter on July 18, 2024, be certified for publication.

CERTIFIED FOR PUBLICATION

MENETREZ
                          J.

We concur:

CODRINGTON
       Acting P. J.

FIELDS
       J.

cc:     See attached list

MAILING LIST FOR CASE: E082812
In re S.R. et al.; DPSS v. J.R.

Superior Court Clerk
Riverside County
P.O. Box 431 - Appeals
Riverside, CA 92502


Julie Jarvi
Office of the County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501


Tracy M. De Soto
Windansea Law Offices
7584 Trade Street
San Diego, CA 92121


Appellate Defenders, Inc.
555 West Beech Street, Suite 300
San Diego, CA 92101-2396