Filed 2/28/25  In re Jayden G. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re JAYDEN G., a Person Coming Under the Juvenile Court Law. | B334928 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 23CCJP4340A) |
| Plaintiff and Respondent, | |
| v. | |
| JULIO G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge.  Affirmed.

Richard B. Lennon and Anna K. Rea, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Avedis Koutoujian, Deputy County Counsel, for Plaintiff and Respondent.

————————————————

Julio G. (father) appeals from jurisdictional and dispositional orders of the juvenile court. Father contends the juvenile court erred by sustaining a count of the dependency petition concerning father's drug use, removing father's infant son from his care, and ordering father to complete a drug rehabilitation program. We find no error, and thus we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Father and Mayra M. (mother) are the parents of Jayden G., who was born in December 2023. Immediately after Jayden's birth, mother tested positive for marijuana, cocaine, and methadone, and Jayden tested positive for methadone.

Mother told a social worker that she had used opiates in the past and had been going to a methadone clinic to treat her addiction. Until she learned she was pregnant in October 2023, she had been using cocaine and marijuana daily. Mother declined referrals to a drug program, saying that she did not need help because she had not used drugs since she learned of her pregnancy.

Father said he had been addicted to opiates in the past but had stopped using about two years earlier. Since then, he and mother had regularly used cocaine and marijuana together until they ceased all drug use in September when they suspected mother might be pregnant. Father declined to drug test, however, saying that he had just used the bathroom. When

2

asked if he would drink fluids and test in an hour, he said he would try but " 'can't promise . . . anything.' " He did not thereafter drink fluids or drug test. Like mother, father declined referrals to a drug program.

Based on the foregoing, the Los Angeles County Department of Children and Family Services (DCFS) opined that father and mother had "chronic substance use issues which . . . evolv[ed] from opioids to cocaine. Both parents are in denial of a current addiction."

On December 14, 2023, the court authorized Jayden's emergency removal from mother and father, and DCFS placed Jayden with his paternal grandparents. Subsequently, DCFS filed a petition alleging: (1) mother had a history of cocaine, fentanyl, marijuana and opiate abuse, currently abused cocaine, marijuana, and methadone, and had a positive toxicology screen at Jayden's birth, and father failed to protect Jayden from mother's substance abuse (count b-1); and (2) father had a history of substance abuse, and was a current abuser of cocaine, marijuana, and methadone (count b-2). The following day, the court detained Jayden from both parents, admonishing the parents that if they were involved in any programs, they should get progress letters to DCFS and their attorneys prior to the adjudication hearing.

DCFS reinterviewed father in January 2024. He again said he had used opiates two or three years earlier, and had used cocaine and marijuana until September 2023. Currently, he was receiving methadone through a methadone clinic. Mother gave a similar report, saying that she and father previously had used cocaine and marijuana together but had stopped using in October 2023.

3

DCFS reported that although mother and father claimed to be receiving services through the BARRT Methadone Clinic, neither parent had provided any participation paperwork, and DCFS had not been able to corroborate their enrollment. Moreover, mother's and father's timelines of reported drug use were not consistent and both parents were "hesitant while answering personal questions involving their drug use." DCFS thus was concerned about the parents' ability to abstain from substance use.

At a January 29, 2024 hearing, father's counsel asked that father be dismissed from the petition because DCFS failed to prove by a preponderance of the evidence either that father currently used any substances or that he knew mother used substances after she learned she was pregnant. With regard to disposition, counsel urged that father should be ordered to drug test only on reasonable suspicion of drug use and should not be required to enroll in a drug program. DCFS and minor's counsel asked the court to sustain the petition as pled and to order the parents to drug test and to complete a substance abuse program and individual counseling.

The juvenile court amended the petition to allege mother and father were drug " 'users,' " rather than " 'abusers,' " and otherwise sustained the petition. It then declared Jayden a juvenile court dependent, ordered Jayden removed from his parents, ordered both parents to complete full substance abuse programs and individual counseling, and granted the parents nine hours of monitored visits per week.

Father timely appealed from the jurisdiction and disposition orders.

4

## DISCUSSION

Father contends: (1) the jurisdictional findings regarding his drug use were not supported by substantial evidence; (2) the trial court erred in finding that reasonable efforts had been made to prevent or eliminate the need for Jayden's removal; and (3) the trial court abused its discretion by ordering father to complete a full drug program. These contentions lack merit, as we discuss.

## I.    The jurisdictional findings regarding father's drug use were supported by substantial evidence.[1]

Welfare and Institutions Code[2] section 300, subdivision (b)(1)(D) provides that a child is within the juvenile court's jurisdiction if, among other things, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [t]he inability of the parent or guardian to provide regular care for the child due to the parent's . . . substance abuse." We review the juvenile

---

[1]    Contrary to DCFS's contention, father's challenge to the juvenile court's true findings as to count b-2 of the petition is justiciable. An appeal of one of several jurisdictional findings is justiciable if it "affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [dispositional] orders which continue to adversely affect' a parent." (*In re D.P.* (2023) 14 Cal.5th 266, 278.) Here, father's challenge to the juvenile court's finding that his substance use placed Jayden at risk of harm is justiciable because it was the basis for the juvenile court's disposition order removing Jayden from father's custody and requiring father to complete a full drug rehabilitation program.

[2]    All subsequent statutory references are to the Welfare and Institutions Code.

court's jurisdictional findings for substantial evidence. " ' "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

In deciding whether there is a substantial risk of serious physical harm within the meaning of section 300, subdivision (b)(1), courts evaluate the risk at the time of the adjudication hearing. " 'While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.' [Citation.]" (*In re Roger S.* (2018) 31 Cal.App.5th 572, 582; see also *In re Ma.V.* (2021) 64 Cal.App.5th 11, 23 [there must be some reason to believe acts creating a risk of harm to the child will continue in the future]; *In re J.N.* (2021) 62 Cal.App.5th 767, 775 [there must be "a nexus between the parent's past conduct and the current risk of harm"].)

Father contends that the trial court erred by sustaining count b-2 of the petition because there was no substantial evidence that father currently was using drugs. The question before the juvenile court, however, was not whether father was using substances at the time of the jurisdictional hearing, but rather whether father's long term substance abuse currently placed Jayden at substantial risk of serious physical harm.

Substantial evidence supported the court's conclusion that it did. Father acknowledged that he had used a variety of substances, including opioids, cocaine, and marijuana, for several years, and had regularly used cocaine and marijuana as recently as two or three months before Jayden's birth. DCFS was not able to verify father's present sobriety because father refused to drug test when asked by a social worker to do so, and he did not provide DCFS with the results of any of the drug tests he claimed to have taken through the methadone clinic. Moreover, even if father had established that he was not currently using drugs, the juvenile court still would have been well within its discretion in concluding that Jayden remained at risk of harm from father's chronic substance abuse in view of his long drug use history and very recent sobriety. "It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform." (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9.) Here, at the time of the disposition hearing, father had abstained from drug use for, at most, three or four months. On this record, therefore, the juvenile court was not required to conclude that one-month-old Jayden was safe in father's care. (See, e.g., *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents did not demonstrate changed circumstances where "both have extensive histories of drug use," and "[t]heir recent efforts at rehabilitation were only three months old"]; *Jennifer S. v. Superior Court* (2017) 15 Cal.App.5th 1113, 1124 [even in the absence of evidence that father was currently abusing substances, "there are certainly facts in the record from which the juvenile court could reasonably infer a continuing problem," including father's failure to comply

7

with random drug testing and the long-standing nature of his substance abuse problem].)[3]

## II. Substantial evidence supported the juvenile court's removal finding.

Section 361, subdivision (c)(1) provides that a child shall not be taken from his parents' physical custody unless the juvenile court finds by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety,

---

[3] In *In re N.R.* (2023) 15 Cal.5th 520, 558–559, our Supreme Court rejected the "tender years" presumption articulated by *In re Drake M.* (2012) 211 Cal.App.4th 754, holding that it is inappropriate to regard a parent's excessive drug use as "*always* being sufficient, by itself to show that a parent or guardian is unable to provide regular care of a young child and that the child is therefore at substantial risk of serious physical harm." Nonetheless, the court said it "is reasonable for courts to infer that very young children require a substantial degree of close supervision," and "[c]ourts may in appropriate circumstances discern an inability to provide regular care and a substantial risk of serious physical harm or illness from the evidence that has been introduced in a particular case, including evidence relating to substance abuse, and the reasonable inferences that can be drawn from this evidence." (*In re N.R.*, at pp. 558–559.)

Father does not contend on appeal that a parent's regular cocaine and marijuana use would not place a newborn child at substantial risk of serious physical harm, and thus any such contention is forfeited. (E.g., *In re H.D.* (2024) 99 Cal.App.5th 814, 817 [" 'Forfeiture . . . applies in juvenile dependency litigation.' "].) In any event, we conclude that the evidence before the juvenile court—namely, father's recent, regular substance use and Jayden's extremely young age—was sufficient to support the juvenile court's findings.

8

protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." The court "shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from their home" and "shall state the facts on which the decision to remove the minor is based." (§ 361, subd. (e).)

We review a dispositional order removing a child from a parent for substantial evidence, " ' "keeping in mind that the trial court was required to make its order based on the higher standard of clear and convincing evidence." ' (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)" (*In re M.V.* (2022) 78 Cal.App.5th 944, 960.) In applying this standard of review, " 'the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true.' [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Ibid.*)

Father contends that the juvenile court erred by failing to state on the record the factual basis for its removal order as the statute requires. Father did not raise this issue in the juvenile court, and thus he forfeited it. (See *In re H.B.* (2024) 106 Cal.App.5th 219, 241, fn. 7 ["Father argues . . . that the juvenile court did not state the facts supporting the bases of its findings that there were no reasonable means of protecting the

9

children without removal and that reasonable efforts were made to prevent or eliminate the need for removal. Father's failure to raise below the adequacy of the juvenile court's factual recitations precludes him from raising the issue on appeal."]; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 222 [mother forfeited appellate contention by failing to assert claim of error in the juvenile court].) In any event, the contention fails on the merits. As noted above, section 361, subdivision (e) requires the court to state the facts on which its decision to remove is based *and*, separately, to make a determination as to whether reasonable efforts were made to prevent or eliminate the need for removal. On its face, therefore, the statute does not require the court to articulate the reasons for its reasonable efforts determination. (*In re H.B.*, at p. 241, fn. 7 ["section 361, subdivision (e) by its terms requires the court to state the facts on which its decision to remove is based and to make a determination as to whether reasonable efforts were made to prevent or eliminate the need for removal; *it does not specify the court must state facts supporting the latter determination*"], italics added.)

Alternatively, father contends DCFS did not offer him reasonable services because it did not "ask[] father if he would be willing to stop living with mother in order to retain custody," did not offer father the option to move with Jayden into the paternal grandparent's home, and did not offer father in-home counseling and nursing services. Father's contention ignores the fact that the juvenile court was concerned not only about *mother's* drug use, but also about *father's*. The services DCFS offered father—specifically, drug rehabilitation and testing—were reasonably tailored to monitor whether father was continuing to use substances and to assist him in overcoming his drug addiction.

10

Substantial evidence thus supported the trial court finding that DCFS offered father reasonable services to prevent Jayden's removal.

## III. The trial court did not abuse its discretion by ordering father to complete a full drug program.

If a child is adjudged a dependent child of the juvenile court, the court may make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child." (§ 362, subd. (a).) The juvenile court has "wide latitude" in making such orders for the well-being of the child and "is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) To the contrary, the court's "broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare." (*In re K.T.* (2020) 49 Cal.App.5th 20, 25.) We review dispositional orders for an abuse of discretion. (*In re A.F.* (2024) 102 Cal.App.5th 778, 786; *In re K.S.* (2016) 244 Cal.App.4th 327, 340.)

Father contends the juvenile court abused its discretion by ordering him to complete a full drug program because father was already participating in a methadone program and there was no evidence father was currently using drugs. Not so. As discussed above, father admitted to recent and long-standing drug use, and the juvenile court could not reliably conclude that father was not currently using drugs because he refused to submit to a drug test. DCFS also could not verify father's participation at the

11

methadone clinic or otherwise corroborate father's participation in services.  The court therefore could not determine if and for how long father had attended the methadone clinic, how regularly he attended, what his level of compliance with services was, whether father was regularly drug testing, and what the results of any tests were.  Under these circumstances, the juvenile court did not abuse its discretion by ordering father to participate in a full drug program.

## DISPOSITION

The jurisdictional and dispositional orders are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

We concur:

ADAMS, J.

HANASONO, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.